In a collision between a Buick sedan, owned by John Lagatutta and operated by Mrs. Lagatutta, and a Chevrolet sedan owned and driven by C.A. Mugnier, both automobiles were severely damaged; the Chevrolet of Mugnier admittedly to the extent of $359.59.
Mugnier had secured from St. Paul Fire Marine Insurance Company a policy of collision insurance in which there was what is known as a $50 deductible clause. Under the terms of this policy, the insurer agreed to pay for all such damage in excess of $50 as might be sustained by the Chevrolet as a result of collision. The insurer, therefore, paid to Mugnier $309.59, taking at the time of payment a written subrogation under which Mugnier assigned to the said insurer all his rights, if any, against such person or persons as may have been liable as a result of the said collision.
The said subrogee, St. Paul Fire Marine Insurance Company, then instituted this suit against Mrs. Lagatutta, alleging that her negligence in the operation of the Buick had caused the accident, and also against New Amsterdam Casualty Company, alleging that that company had issued to Lagatutta, the owner of the Buick, a policy of public liability insurance, and that it was therefore liable directly to plaintiff because of the effect of Act 55 of 1930.
In answer to this petition, defendants deny that the accident resulted from any negligence of Mrs. Lagatutta and aver that it was caused solely by the carelessness of Mugnier, and that, if it should appear that Mrs. Lagatutta was to any extent at fault, the negligence of Mugnier contributed to the accident and should bar recovery by plaintiff.
There was judgment dismissing plaintiff's suit and it has appealed.
The two automobiles met almost head-on on the highway leading from New Orleans to the Mississippi Gulf Coast and at a point a few miles east of the Chef Menteur Bridge. Mrs. Lagatutta, in the Buick, was on her way to New Orleans, and in her car were two friends, Mrs. Moore in front, and Mrs. Laguens in the rear. Mr. Mugnier was on his way to the Gulf Coast. With him was his wife, seated on the front seat.
The day was clear and the concrete highway was dry. The road was what is known as a standard 20 foot highway with a black line marking the center and separating the two traffic lanes. Mugnier was just about to enter a curve to his right and Mrs. Lagatutta had just completed the same curve which, of course, was to her left. Mugnier says that as he saw the *Page 742 
Buick approaching it "was coming out the curve; it didn't straighten out as it should" but continued to turn to its left, crossed the center line of the highway and crashed into the left side of his Chevrolet, which car he says was as far as possible to its right, or correct side of the road.
Mrs. Lagatutta and the ladies with her say, on the contrary, that they saw the Mugnier car approaching when it was some 5 or 6 blocks away; that it had zig-zagged from one side of the road to the other and was far to its left or wrong side of the road; that Mrs. Lagatutta applied her brakes and reduced the speed of her car, drove as far as possible to her right and sounded her horn, and, that at the last moment, Mugnier attempted to turn to the side of the road on which he should have have been and that he thus presented the left side of his car to the Buick which struck it while it was still on the wrong side of the highway.
After the impact, the Chevrolet turned over on the shoulder of the highway to its right and the Buick stopped across the concrete pavement with its front end facing east and its rear turned to the west.
It is apparent, of course, that both versions cannot be correct. There would have been no collision.
Mugnier is an amateur photographer and, immediately after the accident, he took photographs of the two automobiles and of the surface of the road, and he and one of his witnesses point to tire tread marks showing in some of the pictures and identify these marks as having been made by the Buick. They show that the marks cross the center line of the highway to the side on which the Buick should not have passed. The ladies who were in the Buick say, however, that these marks could not have been made by their car and insist that at no time did the Buick cross the center line.
The speed of the Chevrolet must have been fairly high for it to turn over; surely this result was not brought about by the force of the blow because the blow was not a direct one, the two vehicles coming together, not end to end, but, to some extent, side to side.
While the three ladies in the Buick say that they saw the Chevrolet as the two cars approached each other, Mrs. Mugnier, who was in the Chevrolet, admits that she was not looking and knows nothing about the relative locations of the two cars on the highway because, as she says: "I was tinting a picture at the time." The only other witness produced by plaintiff, Mr. McCabe, says that he did not see the collision.
It is quite possible that the picture which Mrs. Mugnier was tinting may have had some connection with the accident because Mr. Mugnier admits that after he first noticed the on-coming Buick some distance away, "I looked over at my wife", and he further admits that "it may have been" to look at the picture which she was tinting. He says that when he looked up the Buick was about 100 feet away. He also said that at various times his wife had called his attention to "something on the picture" and that he "had glanced over."
Plaintiff contends that there may have been beer or other intoxicants in the rear of the Lagatutta car, and shows that shortly after the accident Mrs. Lagatutta arranged with the driver of another vehicle, which was passing, to take a beer case and some packages from the back of the car. Mrs. Lagatutta and the other ladies explained that the beer case was merely used for the carrying of pecans, and the other packages contained tuxedos which had been used at the wedding, and which they were obligated to return as soon as possible.
We are not at all convinced that the tire marks were made by the Buick, unless possibly, after the occurrence of the accident. The ladies who were in the Buick cannot all be mistaken in saying that they saw the Chevrolet and discussed the fact that it was on the wrong side of the road, and was crossing back and forth, and we think that Mugnier is mistaken when he says that he saw the Buick on his side of the road. In view of the plain fact that he had not looked ahead until the two cars had almost collided, and in view also of the fact that speed on his part is indicated by the subsequent turning over of his car, we conclude not to disturb the finding of the district court.
Consequently, the judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 743